IN THE UNITED STAES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
C.A. NO.

| | |
|---|---|
| MB REALTY GROUP, INC. and MATT BECKHAM, <br><br> Plaintiffs, <br><br> vs. <br><br> THE GASTON COUNTY BOARD OF EDUCATION, GASTON COUNTY, W. JEFFREY BOOKER, in his capacity as Superintendent of The Gaston County Board of Education and individually, CARSTARPHEN FAMILY FOUNDATION, THE STOWE FOUNDATION, INC., CATHERINE ROBERTS, and TRACY PHILBECK, <br><br> Defendants. | **COMPLAINT** |

COME NOW Plaintiff MB Realty Group, Inc. and Plaintiff Matt Beckham ("Plaintiffs") complaining of Defendants The Gaston County Board of Education, The Gaston County Board of Commissioners, W. Jeffrey Booker, both in his capacity as superintendent of The Gaston County Board of Education and individually, Carstarphen Family Foundation, The Stowe Foundation, Inc., Catherine Roberts, and Tracy Philbeck (collectively, "Defendants"), and alleges and says the following:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff MB Realty Group, Inc. ("Plaintiff MBRG") is a corporation organized and existing under the laws of North Carolina and is authorized to do business in Gaston County, North Carolina.

2. Plaintiff Matt Beckham ("Mr. Beckham") is a citizen and resident of Catawba County, North Carolina.

3. Upon information and belief, Defendant The Gaston County Board of Education ("GCBOE") is an entity organized and existing under the laws of North Carolina and is authorized to do business in Gaston County, North Carolina.

4. Upon information and belief, Defendant Gaston County is an entity organized and existing under the laws of North Carolina and is authorized to do business in Gaston County, North Carolina.

5. Upon information and belief, Defendant W. Jeffrey Booker is a citizen and resident of Gaston County, North Carolina and was at all times relevant hereto the superintendent of The Gaston County Board of Education, and he is made a defendant in this action in both his individual and official capacities.

6. Defendant The Gaston County Board of Education, Defendant Gaston County, and Defendant W. Jeffrey Booker are hereinafter referred to collectively as "Purchasing Defendants."

7. Upon information and belief, Defendant Carstarphen Family Foundation is an entity organized and existing under the laws of North Carolina and is authorized to do business in Gaston County, North Carolina.

8. Upon information and belief, Defendant The Stowe Foundation, Inc. is a corporation organized and existing under the laws of North Carolina and is authorized to do business in Gaston County, North Carolina.

9. Defendant Carstarphen Family Foundation and Defendant The Stowe Foundation, Inc. are hereinafter referred to together as "Selling Defendants."

10. Upon information and belief, Defendant Catherine Roberts is a citizen and resident of Gaston County, North Carolina.

11. Upon information and belief, Defendant Tracy Philbeck is a citizen and resident of Gaston County, North Carolina.

12. Defendant Catherine Roberts and Defendant Tracy Philbeck are hereinafter referred to together as "Publishing Defendants."

13. Plaintiff MBRG is a person injured in its business or property by reason of conduct forbidden in the antitrust laws of the United States and has a private right of action pursuant to 15 U.S.C. § 15(a).

14. Purchasing Defendants' conduct as governmental entities was in their propriety capacity at all times relevant to this complaint.

15. Plaintiff MBRG is a corporation entitled to sue for and have injunctive relief against threatened loss or damage by a violation of the antitrust laws pursuant to 15 U.S.C. § 26.

16. Plaintiffs' injuries have been proximately caused by the conduct of Defendants.

17. This case involves a question of federal law, and this Court has jurisdiction over these parties and is an appropriate venue for the adjudication of Plaintiffs' claims pursuant to 28 U.S.C. § 1331.

## FACTS

18. In the summer of 2016, a representative of GCBOE contacted Plaintiff MBRG and indicated that Jeff Booker wished to have Plaintiff MBRG's assistance in finding property for a new middle school.

19. Due to prior experiences with GCBOE, Plaintiff MBRG declined.

20. GCBOE persisted, and Plaintiff MBRG was contacted again and asked if Plaintiff MBRG had any referrals. Plaintiff MBRG again declined to be involved.

21. GCBOE contacted Plaintiff MBRG again in August of 2016 and requested Mr. Beckham (on behalf of Plaintiff MBRG) to come to a meeting, which was attended by Mr. Beckham, Jeff Booker, Kevin Collier, and Kenny Lutz.

22. Upon entering the meeting, Jeff Booker commented to Mr. Beckham, "This meeting never happened."

23. At that meeting, GCBOE told Mr. Beckham in detail about GCBOE's need for property and asked Plaintiff MBRG to help.

24. Plaintiff MBRG indicated that it would keep GCBOE in mind as Plaintiff MBRG was looking at properties in Belmont for other deals Plaintiff MBRG was pursuing.

25. In early October 2016, Plaintiff MBRG entered into a contract with Selling Defendants to purchase real property consisting of 78.54 acres on South Point Road in Belmont, North Carolina, which is a portion of Gaston County PID #216910 ("Property").

26. Plaintiff MBRG had conversations with interested buyers of the Property, including a residential builder.

27. Plaintiff MBRG approached GCBOE in October 2016, and GCBOE expressed a lot of interest in purchasing the Property.

28. Directly after this meeting, GCBOE requested that Plaintiff MBRG assign the contract to GCBOE, and Plaintiff MBRG declined.

29. On or about January 15, 2017, Plaintiff MBRG and GCBOE entered into a contract ("Contract") for the sale and purchase of the Property.

30. GCBOE communicated that it was seeking a quick closing.

31. Plaintiff MBRG, as seller, agreed to sell the Property to GCBOE, as buyer, in exchange for the sum of $65,000 per acre net of road right of way.

32. On or about January 25, 2017, representatives of Gaston County circulated an email making false statements about Plaintiff MBRG's original intentions regarding the Property and undermining the value with no credentials to back up the claims in undermining the certified MAI appraisal obtained by Plaintiff MBRG.

33. GCBOE then requested additional time to close, and parties to the contract signed an extension on or about February 21, 2017.

34. On or about March 1, 2017, Defendant Tracy Philbeck re-published an email to various members of GCBOE and others, which email was originally published by Defendant Catherine Roberts ("Email").

35. Via the Email, Publishing Defendants made false statements about a prior transaction involving Mr. Beckham, specifically stating that "Pearson, Gray and Hoyle refuse to take the commission owed to them, due to the fact of the land purchase going on before the foreclosure process and because of the relationship between Kevin and Matt Beckham. Matt Beckham is paid a commission fee."

36. Publishing Defendants knew or should have known that such statements were false when the closing statement related to the referenced transaction shows that Pearson, Gray and Hoyle received payment in the amount of $105,000.

37. No representative of Gaston County ever contacted Plaintiff MBRG to verify anything.

38. Numerous articles appeared in the Gaston Gazette, which were part of the Purchasing Defendants ongoing effort to cast Plaintiffs in a bad light and undermine the deal, the value of the property, and Plaintiffs' reputations.

39. Various employees, agents and elected officials of the Purchasing Defendants, including without limitation the Publishing Defendant, spoke about Plaintiffs' dealing with the Property in reckless disregard of the truth.

40. The publication of the details of the contracts involved worked to interfere with Plaintiff MBRG's ability to fairly market the Property to any other third parties.

41. Other builders and end users with whom Plaintiff MBRG had communicated did not want their names in the paper along with Plaintiffs' and stopped all communication with Plaintiffs.

42. On or about late March of 2017, Plaintiff MBRG requested an additional extension from the Property owners, but the Property owners refused.

43. Upon information and belief, Purchasing Defendants were in repeated and direct contact with the Selling Defendants regarding the Property and advised them not to renew or extend the Contract with Plaintiff MBRG.

44. Upon information and belief, the Purchasing Defendants and Selling Defendants have acted in concert and with purposeful intent to remove Plaintiff from the sale of the Property.

45. Plaintiff MBRG's purchase price became public record without Plaintiff MBRG's permission or authorization.

46. Upon information and belief, Purchasing Defendants communicated with Selling Defendants regarding Purchasing Defendants' plan to purchase the Property directly from Selling Defendants instead of honoring the Contract GCBOE had with Plaintiff MBRG.

47. Upon information and belief, Selling Defendants were communicating with Purchasing Defendants during the time when Selling Defendants were under contract with Plaintiff MBRG with regard to the Property.

48. Upon information and belief, Purchasing Defendants and Selling Defendants have recently reached a deal with regard to a sale of the Property, purporting to cut Plaintiff MBRG out of the transaction.

49. Upon learning about such a deal, Plaintiff MBRG reached out to attorneys for Gaston County and GCBOE to try and revive its deal.

50. Plaintiff MBRG never terminated the Contract.

51. The conduct of Selling Defendants was the direct and proximate cause of the closing not occurring on or before May 2, 2017 with regard to the Contract.

52. Plaintiff MBRG was representing itself with regard to the Contract and was entitled to a $141,135.00 commission related to the Contract.

53. As part of a civil conspiracy, members of Purchasing Defendants and the Gaston County Board of Commissioners spoke outside of session about the Contract as well as the proposed deal with Selling Defendants, even when the Property was under contract with Plaintiff MBRG.

## COUNT ONE - FRAUD

54. Plaintiffs herein re-allege and incorporate by reference all prior paragraphs of this Complaint.

55. Purchasing Defendants falsely represented to Plaintiff MBRG that they had the present intent to purchase the Property when they entered into the Contract.

56. Purchasing Defendants' false representation was reasonably calculated to deceive Plaintiff MBRG so that Plaintiff MBRG would enter into the Contract.
57. Purchasing Defendants' false representation was done with the intent to deceive and the intent that the representation be acted upon, as demonstrated by the parties entering into the Contract.
58. Plaintiff MBRG was, in fact, deceived by Purchasing Defendants' false representation and acted upon it.
59. Plaintiff MBRG's reliance upon Purchasing Defendants' false representation was reasonable.
60. Plaintiff MBRG has suffered damages proximately caused by Purchasing Defendants' false representation in an amount to be determined at trial.

## COUNT TWO: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

61. Plaintiffs herein re-alleges and incorporate by reference all prior paragraphs of this Complaint.
62. The unfair and bad faith conduct of Purchasing Defendants and Selling Defendants as alleged elsewhere in this Complaint constitutes a breach of the implied covenant of good faith and fair dealing.
63. The unfair and bad faith conduct by the Purchasing Defendants and Selling Defendants, by and through one or more of their respective agents or representatives, proximately caused Plaintiff MBRG to suffer damages in an amount to be determined at trial.

## COUNT THREE: ANTI-TRUST VIOLATION

64. Plaintiffs herein re-alleges and incorporate by reference all prior paragraphs of this Complaint.

65. Upon information and belief, the individual defendants were acting outside of their respective official capacities with regard to the conduct described above.

66. Purchasing Defendants and Selling Defendants have engaged in a combination or conspiracy to unreasonably restrain trade in violation of 15 U.S.C. § 1.

67. The conduct of Purchasing Defendants and Selling Defendants has proximately caused Plaintiff MBRG to suffer injury to its business or property by reason of conduct forbidden in the antitrust laws of the United States, which damages are in an amount to be determined at trial.

68. Pursuant to 15 U.S.C. § 15(a), Plaintiff MBRG is entitled to recover threefold the damages by it sustained, and the cost of suit, including a reasonable attorney's fee.

69. Purchasing Defendants and Selling Defendants have threatened loss or damage to Plaintiff MBRG by a violation of the antitrust laws.

70. The danger or irreparable loss or damage to Plaintiff MBRG is immediate.

71. Pursuant to 15 U.S.C. § 26, Plaintiff MBRG requests the Court to issue a preliminary injunction and award the cost of suit and a reasonable attorney's fee to Plaintiff MBRG.

## COUNT FOUR: UNJUST ENRICHMENT

72. Plaintiffs herein re-allege and incorporate by reference all prior paragraphs of this Complaint.

73. As the procuring cause of the transaction involving Purchasing Defendants and Selling Defendants, Plaintiff MBRG conferred benefits on Purchasing Defendants and Selling Defendants, which benefits had value to Purchasing Defendants and Selling Defendants.

74. Such benefits were not conferred gratuitously or by interfering in the affairs of Purchasing Defendants and Selling Defendants.

75. At the time the benefits were conferred, Plaintiff MBRG expected benefits from the transaction involving Purchasing Defendants and Selling Defendants, including the amount of $400,594.00 before the costs of the transaction.

76. Plaintiff MBRG's expectation of benefits from the transaction involving Purchasing Defendants and Selling Defendants was reasonable.

77. Purchasing Defendants and Selling Defendants received the benefits with the knowledge or reason to know that Plaintiff MBRG expected to receive payment related to the transaction.

78. Purchasing Defendants and Selling Defendants voluntarily and consciously accepted the benefits.

79. It would be unfair for Purchasing Defendants and Selling Defendants to retain the benefits received without Plaintiff MBRG being compensated.

80. As a direct and proximate result of unjust enrichment to Purchasing Defendants and Selling Defendants, Plaintiff MBRG has been damaged in an amount to be determined at trial and is entitled to recover the same from Purchasing Defendants and Selling Defendants, jointly and severally.

## **COUNT FIVE: QUANTUM MERUIT**

81. Plaintiffs herein re-allege and incorporate by reference all prior paragraphs of this Complaint.

82. Plaintiff MBRG was the procuring cause of the transaction involving Purchasing Defendants and Selling Defendants, which transaction is the direct and proximate result of Plaintiff MBRG's efforts and services, and Plaintiff MBRG is entitled to the reasonable value of its services.

83. The services rendered by Plaintiff MBRG had value to Purchasing Defendants and Selling Defendants.

84. At the time such services were rendered, Plaintiff MBRG expected payment from the transaction involving Purchasing Defendants and Selling Defendants.

85. Plaintiff MBRG's expectation of such payment was reasonable.

86. Purchasing Defendants and Selling Defendants received Plaintiff MBRG's services with the knowledge or reason to know that Plaintiff MBRG expected to receive payment.

87. Purchasing Defendants and Selling Defendants voluntarily and consciously accepted Plaintiff MBRG's services.

88. As a direct and proximate result of the foregoing, Plaintiff MBRG has been damaged in an amount to be proven at trial and is entitled to recover the same from Purchasing Defendants and Selling Defendants, jointly and severally.

## COUNT SIX: LIBEL

89. Plaintiffs herein re-allege and incorporate by reference all prior paragraphs of this Complaint.

90. Publishing Defendants made statements that are libelous on their face.

91. Mr. Beckham is a private figure, and the subject matter of the statements is of public concern.

92. Publishing Defendants wrote and published false statements about Mr. Beckham.

93. The false statements were such that they tend to impeach, prejudice, discredit, or reflect unfavorably upon Mr. Beckham in his trade or profession.

94. Publishing Defendants intended the false statements to impeach Mr. Beckham in his trade or profession.

95. Upon information and belief, the persons other than Mr. Beckham to whom the statement was published reasonably understood the statements to impeach Mr. Beckham in his trade or profession.

96. At the time of publication, Publishing Defendants knew the statements were false or failed to exercise ordinary care in order to determine whether the statements were false.

97. Mr. Beckham, as a result of the publications, suffered a monetary or economic loss in an amount to be determined at trial and is entitled to recover the same from Publishing Defendants, jointly and severally.

## COUNT SEVEN: PUNITIVE DAMAGES

98. Plaintiffs herein re-allege and incorporate by reference all prior paragraphs of this Complaint.

99. The conduct of Defendants as alleged elsewhere in this Complaint was malicious, knowing and in wanton disregard to the rights of the Plaintiffs.

100. Such conduct was knowingly carried out by those persons with officer or managerial authority for Defendants.

101. The willful or wanton conduct of Defendants resulted in harm to the Plaintiffs.

102. Plaintiffs hereby seek punitive damages from Defendants.

WHEREFORE, the Plaintiffs pray the Court for relief as follows:

1. That the Court find that all Defendants are liable to Plaintiffs on all counts, respectively, as more fully described above;

2. To issue a preliminary injunction against Defendants and in favor of Plaintiff MBRG;

3. That Plaintiffs have and recover from Defendants, jointly and severally, a sum in excess of $75,000.00, plus interest, including prejudgment and post-judgment interest, as the same may appear;

4. That Plaintiff MBRG have and recover from Purchasing Defendants and Selling Defendants, jointly and severally, treble damages pursuant to the Clayton Act;

5. That Plaintiffs have and recover from Defendants punitive damages;

6. That Plaintiffs have and recover from the Defendants, jointly and severally, the costs and expenses of this action, including reasonable attorney's fees;

7. That Plaintiffs be granted a trial by jury on all issues of fact arising herein; and

8. That Plaintiffs have such other and further relief that the Court deems just and proper.

This the 18 day of July, 2017.

James P. Galvin
N.C. Bar No. 33933
*Attorney for Plaintiffs*
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Ste. 608
Charlotte, North Carolina 28204
Phone: (704) 377-4164
Fax: (704) 377-5503
Email: james@twbglaw.com