UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00427-FDW-DCK

| | |
|---|---|
| MB REALTY GROUP, INC. and MATT BECKHAM,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE GASTON COUNTY BOARD OF EDUCATION, GASTON COUNTY, CARSTAPHEN FAMILY FOUNDATION, THE STOWE FOUNDATION, INC., CATHERINE ROBERTS, and TRACY PHILBECK,<br><br>    Defendants. | ORDER |

THIS MATTER is before the Court on Defendants Carstarphen Family Foundation, The Stowe Foundation, Inc., Tracy Philbeck, Gaston County, Gaston County Board of Education, and Catherine Roberts' Motions for Summary Judgment (Docs. Nos. 99, 101, 102, 104, 108). Plaintiffs responded to the motions, (Docs. Nos. 113, 114, 115, 116, 117), Defendants replied, (Docs. Nos. 118, 120, 121, 123, 124), and parties presented argument at a hearing before the undersigned on April 10, 2019. This matter is now ripe for review. For the reasons stated below, Defendants Gaston County, Gaston County Board of Education, Tracy Philbeck, and Catherine Roberts' Motions for Summary Judgment (Docs. Nos. 101, 102, 104, 108) are GRANTED. Defendants Carstarphen Family Foundation and The Stowe Family Foundation, Inc.'s Motion for Summary Judgment (Doc. No. 99) is GRANTED in part and DENIED in part.

I. BACKGROUND

On October 3, 2016, MBRG entered into a written contract to purchase the 78-acre subject

1

property from Carstarphen Family Foundation and The Stowe Family Foundation, Inc. ("The Foundations") for $4,704,506 that did not contain a "time is of the essence" clause. (Doc. No. 100, p. 3). The closing date, with all extensions was May 2, 2017. Id. The Foundations hired Robert Clay ("Bob Clay") of Coldwell Banker Commercial MECA ("MECA") to list and sell the property. Id. Matt Beckham ("Beckham") met with the Gaston County Board of Education ("the GCBOE") attorney Kevin Bringewatt ("Bringewatt") to structure a deal for the GCBOE to purchase half of the property. (Doc. No. 107, p. 3). That deal did not come to fruition and the GCBOE agreed to purchase the entire 78-acre lot. Id. Bringewatt and Beckham met to structure the deal, which did not include Beckham as the GCBOE's broker. Id. at 3-4.

On January 15, 2017, MB Realty Group, Inc. ("MBRG") and the GCBOE finalized a contract that provided that the final purchase price was subject to Gaston County approval. Id. at 4. The contract included a feasibility study period and a closing deadline of February 27, 2017. Id. The closing deadline was extended to March 31, 2017, in exchange for a nonrefundable $40,000 payment by the GCBOE. Id. When Gaston County failed to approve the purchase price, the contract between the GCBOE and MBRG terminated. Id.; (Doc. No. 103, p. 2).

On March 23, 2017, The Foundations sent a letter to MBRG confirming the dates of their contract for MBRG to buy the subject property, including the outside closing date of May 2, 2017, and asking Plaintiffs to confirm. (Doc. No. 100, p. 4). Plaintiffs never contacted The Foundations to close. Id. On May 3, 2017, The Foundations sent a letter to MBRG extending the closing date until May 16, 2017. Id. at 5. Plaintiffs never contacted The Foundations providing a date to close. Id. On May 5, 2017, The Foundations contacted Gaston County about purchasing the subject property given that it appeared MBRG may not close. (Doc. No. 107, p. 5). The contract for MBRG to purchase the subject property terminated on May 16, 2017, and The Foundations sent a

letter to MBRG that day to terminate the contract. (Doc. No. 100, p. 5). The Foundations put the property on the market and began new negotiations with Gaston County and the GCBOE. Id. On July 10, 2017, approximately two months after the termination of the contract between MBRG and The Foundations, The Foundations entered into a new agreement with the GCBOE to purchase the subject property that Gaston County approved. Id. Plaintiffs subsequently brought the present lawsuit. Defendants now move for summary judgment on all of Plaintiffs' remaining claims.

## II. LEGAL STANDARD

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact in the case. Fed. R. Civ. P. 56(a). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the burden shifts and the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

Simply "rest[ing] upon the mere allegations or denials of [a plaintiff's] pleadings" is insufficient to survive a properly made and supported motion for summary judgment. Id. at 586 n.11. Instead, the non-moving party must adduce affirmative evidence, by means of affidavits or other verified evidence, showing that a genuine dispute of material fact exists. See id. at 586–87. "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013).

III. ANALYSIS

A. Libel *Per Se*[1]

Under North Carolina law, libel *per se* is "a publication . . . which, when considered alone *without* innuendo, colloquium, or explanatory circumstances . . . tends to impeach a person that person's trade or profession." Renwick v. News and Observer Pub. Co., 312 S.E.2d 405, 408-09 (N.C. 1984) (emphasis added) (citing Flake v. Greensboro News Co., 195 S.E. 55, 60 (1938)). To be libelous *per se*, defamatory words "must be susceptible of *but one meaning* and of such a nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to the public hatred, contempt or ridicule, or cause him to be shunned and avoided." Flake, 195 S.E. at 60 (emphasis added). "The fact that supersensitive persons with morbid imaginations may be able, by reading between the lines of [a publication], to discover some defamatory meaning therein is not sufficient to make it libelous." Id.

Here, the Court finds that the emails published by Philbeck, (Doc. No. 101-2, pp. 6, 29-30), and Roberts, (Doc. No. 108-7), do not rise to a level of libel *per se* because the emails, stripped of all innuendo, explanatory circumstances, and insinuations regarding what the statement impute to Beckham, fail to assert any illegal or wrongful activity by Beckham. See Diagnostic Devices, Inc. v. Doctor Diabetic Supply, Inc., 3:09-cv-135-GCM, 2010 WL 143094, at *2 (W.D.N.C. Jan. 11, 2010) ("In a business context, a statement that does not 'assert any illegal or wrongful activity' by the plaintiff, generally does not rise to the level of defamation recognized under North Carolina law."). Roberts' expression of opinion cannot serve as a basis of Beckham's libel *per se* claim. See Biospherics, Inc. v. Forbes, Inc., 151 F.3d 180, 185 (4th Cir. 1998) (citing Moldea v. New York Times Co., 15 F.3d 1137, 1144-45 (D.C. Cir. 1994) ("Because the reader understands that

---

[1] Because Beckham has only alleged libel *per se*, see (Doc. No. 32) ("Publishing Defendants made statements that are *libelous on their face*."), Beckham's arguments related to other forms of libel are not property before this Court.

such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation.")); Daniels v. Metro Magazine Holding Co., LLC., 634 S.E.2d 586, 590 (N.C. Ct. App. 2006) (citations omitted) (Pure expressions of opinion are protected). Moreover, even if the emails contained statements that could be read to suggest a defamatory meaning, because the statements could also be read to suggest a nondefamatory interpretation, it could not be libelous *per se*. See Flake, 195 S.E. at 60; Oates, 169 S.E. at 871.

Finally, even assuming *arguendo* the emails are libelous, Philbeck and Roberts are entitled to qualified immunity. See Presnell v. Pell, 260, S.E.2d 611, 614 (N.C. 1979); see, e.g., Kling v. Harris Teeter Inc., 338 F. Supp. 2d 667, 673 (W.D.N.C. 2002), aff'd, 86 Fed. Appx. 662 (4th Cir. 2004) (holding that when an otherwise defamatory communication is made in furtherance of a political duty, the declarant is entitled to qualified immunity unless actual malice is shown). Apart from bare assertions and argument, Beckham has put forth no evidence of actual malice. Accordingly, the Court grants summary judgment as to Beckham's libel *per se* claims.

B. North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA")

The question of what constitutes an unfair or deceptive trade practices is an issue of law. See L.C. Williams Oil Co. v. Exxon Corp., 625 F.Supp. 477, 482 (M.D.N.C. 1985). Here, because the Court finds no libel *per se*, the Court dismisses Beckham's UDTPA claims as to Philbeck and Roberts. But see, e.g., Mkt. Choice, Inc v. New England Coffee Co., No. 5:08–CV–90, 2009 WL 2590651, at *11 (W.D.N.C. Aug. 18, 2009) (citing Ellis v. Northern Star Co., 388 S.E.2d 127, 131 (1990) (finding that "[d]efamation *per se* impeaching a party in its business activities may constitute an unfair or deceptive act in or affecting commerce under § 75–1.1.")). The Court also dismisses MBRG's UDTPA claim against The Foundations because MBRG has failed to provide

5

any evidence of "*substantial* aggravating circumstances attending the breach to recover under the Act."[2]  See Branch Banking & Trust co. v. Thompson, 107 N.C.App. 53, 418 S.E.2d 694, 700 (N.C.Ct.App.1992) (emphasis added); see also Bartolomeo v. Thomas, Inc., 889 F.3d 530, 532-34 (4th Cir.1989) (finding that "the core of [plaintiff's] claim here[,] . . . that for a period of time . . . he was 'deceived' about the status of his distributorship[,]" went to the underlying breach of contract claim and did not rise to the level of a violation of the UDTPA).

C. Punitive Damages

North Carolina does not recognize a "cause of action" for punitive damages.  See Hawkins v. Hawkins, 400 S.E.2d 472, 473 (N.C. Ct. App. 1991) ("As a general rule, '[p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it.  If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all . . . .'") (citation omitted).  Rather, "punitive damages may be awarded only if a claimant proves that the defendant is liable for compensatory damages and that the defendant is guilty of fraud, malice, or willful or wonton conduct."  Combs & Associates, Inc. v. Kennedy, 555 S.E.2d 634, 642 (N.C. Ct. App. 2001) (citation omitted).  Normally, where "an unauthorized publication is libelous *per se*, malice and damage are presumed from the fact of publication . . . ."  Flake, 195 S.E. at 59.  However, because the Court finds that Philbeck's and Roberts' emails were not libelous *per se*, the Court dismisses the punitive damages claims against Philbeck and Roberts.  The Court also dismisses MBRG's punitive damages claim against The Foundations.  See McKeown v. Tectran Mfg., Inc., 5:17-cv-109-GCM, 2018 WL 1431748, at *4 (W.D.N.C. Mar. 22, 2018) (citation omitted) ("[P]unitive damages [are not] available for breach of the implied covenant of good faith

---

[2] MBRG will of course have the opportunity to pursue these claims under its breach of the implied covenant claim. See, e.g., Bartolomeo, 889 F.3d at 536.

and fair dealing."); see Recycling Solutions, Inc. v. Orrs' Envtl, LLC, 2015 WL 3948981, *9 (D.Md. June 26, 2015) (finding no punitive damages based on equitable claims).

D. Governmental Immunity Defenses

Municipal corporations are immune to tort claims unless immunity has been expressly waived. See Data General Corp. v. Cty. of Durham, 545 S.E.2d 243, 246 (N.C. Ct. App. 2001); see also Battle Ridge Cos. v. N.C. Dep't of Transp., 587 S.E.2d 426, 427 (N.C. Ct. App. 2003). However, this immunity only extends to activities which are governmental, rather than proprietary, in nature. Estate of Williams ex rel. Overton v. Pasquotank Cty. Parks & Recreation Dep't, 732 S.E.2d 137, 140–41 (N.C. 2012). In determining whether an entity is entitled to governmental immunity, the result turns on whether the alleged tortious conduct of the county of municipal corporations arose from an activity that was governmental or proprietary in nature.

Here, the Court finds that Gaston County and the GCBOE's activities arose from activities that are governmental in nature because the actions were taken pursuant to their statutory authority. Bynum v. Wilson Cnty., 758 S.E.2d 643, 646 (N.C. 2014) (An activity qualifies as governmental when the North Carolina legislature designates the particular activity as governmental). Gaston County's investigation regarding the proposed funding for school sites and subsequent approval of the purchase of the land, were discretionary decisions in exercise of its statutory duties under N.C.G.S. § 115C-426. Similarly, the Court finds that the GCBOE's discussions and ultimate purchase and holding of land for school purposes were actions taken pursuant to its statutory authority. See N.C. Gen. Stat. §115C-40 ("The several boards of education, both county and city, shall hold all school property and be capable of purchasing and holding real and personal property, of building and repairing schoolhouses, of selling and transferring the same for school purposes, and of prosecuting and defending suits for or against the corporation."). The GCBOE's joint

7

agreement with the City of Belmont is also authorized by statute and governmental in nature. See N.C. Gen. Stat. §115C-12(35). Moreover, assuming *arguendo* that the Court needed to consider the next step in Estate of Williams, that the activities arose from functions that can only be performed by Gaston County—investigating the purchase of and approving contracts to fund the acquisition of real property for school purposes—and the GCBOE—purchasing and holding real property for school purposes—establishes that the activities are governmental. See Estate of Williams, 732 S.E.2d at 142 ("[An] activity is necessarily governmental in nature when it can only be provided by a governmental agency or instrumentality.").

MBRG's argument that Gaston County and the GCBOE engaged in proprietary functions., which hinges on the purchase of excess land, in part, for future use, is unpersuasive and insufficient to survive summary judgment. See Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008) ("The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but "must come forward with specific facts showing that there is a genuine issue for trial. 'Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.' Nor can the nonmoving party create a genuine issue of material fact through mere speculation or the building of one inference upon another."). All the record evidence, when compared to MBRG's unsupported speculations, persuades the Court that Gaston County and the GCBOE were engaged in governmental functions entitling them to governmental immunity.

"A municipality may, however, waive its governmental immunity to the extent it has purchased liability insurance." Hart v. Brienza, 784 S.E.2d 211, 216 (internal quotation marks and citation omitted), review denied, 369 N.C. 69, 793 S.E.2d 223 (2016); see N.C. Gen. Stat. § 153A-435(a). But that waiver applies only "to the extent of insurance coverage." N.C. Gen. Stat. §

153A-435(a). "When a court examines policy provisions allegedly waiving governmental immunity, the court *must* strictly construe the provision *against* waiver." Ballard v. Shelley, 811 S.E.2d 603, 606 (N.C. Ct. App. 2018) (emphasis added) (citation omitted).

Here, the Court finds that neither Gaston County nor the GCBOE waived their governmental immunity by purchasing liability insurance. Gaston County's waiver was not triggered under its self-insured retention program. See Magana, 645 S.E.2d at 92-93 (holding that the Board's self-insured retention exhaustion requirement had the effect of making the "insurance policy's coverage contingent upon the Board's liability, the Board's failure to exhaust the retained limit had not waived its sovereign immunity); see also Grier v. Gray, No. 3:17-cv-00486-FDW-DSC, 2018 WL 4620628, at *5 (W.D.N.C. Sept. 26, 2018) (holding that the purchase of the policies with self-insured retention programs did not waive the board of education's governmental immunity) (citations omitted). The GCBOE's insurance policy specifically excludes MBRG's claims from coverage. (Doc. No. 104-61, pp. 108, 120-23) (covering only "bodily injury" and "property damage"); see Overcash, 348 S.E.2d at 526 ("[W]aiver of immunity extends only to injuries which are specifically covered by the insurance policy.").

Municipalities and municipal corporations, however, do not waive governmental immunity as to contracts implied in law. See M Series Rebuild, LLC v. Town of Mount Pleasant, 730 S.E.2d 254, 259-60 (N.C. Ct. App. 2012) (citing Whitfield v. Gilchrist, 497 S.E.2d 412 (N.C. 1998)) (finding that courts may not imply a contract in law in the absence of a valid contract and allow a party to recover under an equitable remedy such as unjust enrichment or *quantum meruit* in derogation of sovereign immunity). Here, because MBRG and the GCBOE never expressly entered into a valid contract for the broker services allegedly rendered by MBRG, governmental immunity bars MBRG's unjust enrichment/*quantum meruit* claims. See id. at 257 ("[W]ithout an

allegation of a valid contract, plaintiff did not demonstrate that defendant had waived its [governmental] immunity; and therefore, the trial court lacked jurisdiction over defendant.").

Accordingly, the Court finds no waiver of Gaston County and the GCBOE's governmental immunity as to MBRG's fraud, tortious interference with prospective economic advantage, tortious interference with contract right, unjust enrichment, and *quantum meruit* claims.

E. Breach of the Implied Covenant of Good Faith and Fair Dealing[3]

The North Carolina Supreme Court "has recognized that in every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injuries the right of the other to receive the benefits of the agreement.'" Murray v. Nationwide Mut. Ins. Co., 472 S.E.2d 358, 368 (N.C. Ct. App. 1996) (quoting Bicycle Transit Auth., Inc. v. Bell, 333 S.E.2d 299, 305 (N.C. 1985)). "[A]lthough various district courts have stated that where a breach of contract claim and breach of implied covenant claim are based on the same facts, they should be considered together," Robinson v. Deutsche Bank Nat. Trust Co., No. 5:12-cv-590-F, 2013 WL 1452933, at *11 (E.D.N.C. Apr. 9, 2013) (citation omitted), the fact that MBRG did not allege a breach of a specific provision does not doom its claim, see id. ("[T]his court has not identified a North Carolina state court case holding that a plaintiff must allege that a specific contractual provision has been breached in order to maintain a breach of implied covenant claim."); see also Richardson v. Bank of Am., N.A., 556, 643 S.E.2d 410, 426 (N.C. Ct. App. 2007).

In support of its motion, the GCBOE has shown no genuine issue of material fact that the GCBOE failed to fact in good faith. As summarized by the GCBOE in its memorandum,

---

[3] Generally, a county may waive its immunity by entering into a valid contract. Fuller v. Wake County, 802 S.E.2d 106, 113 (N.C. Ct. App. 2017). However, MBRG failed to explicitly raise a contract theory of waiver as to its breach implied covenant claim nor set forth any argument in support thereof, and thus this theory is not properly before this Court. Notably, MBRG did not assert a breach of contract claim. See Howard v. County of Durham, 748 S.E.2d 1, 3 (N.C. Ct. App. May 7, 2013) (finding that the county "is not protected by sovereign immunity as to a *claim for breach of contract*, if there was a valid contract between it and the plaintiff."). The Court, nevertheless, finds that even if MBRG had properly asserted a contract theory of waiver, summary judgment is warranted on substantive grounds.

10

> The GCBOE engaged in due diligence to ensure the Property was suitable for a school within the time frame contemplated by the contract. The GCBOE voted in open session to approve the purchase, as required by the contract with MBRG. However, the GCBOE could not legally complete the purchase of the Property without approval from the GCBOC of the "amount to spend for the site." In fact, the GCBOE took extraordinary efforts to get the contract with MBRG across the finish line. When the GCBOC cancelled its February 2017 meeting, which made closing before the original deadline impossible, the GCBOE paid a $40,000 non-refundable fee to MBRG to extend the contract. GCBOE staff was regularly in communication with County staff about the Property Purchase, and Collier, the GCBOE chairman, kept County commissioners apprised of the steps that were being taken to acquire the Property from MBRG. Repeated efforts were made by the GCBOE to get the item on the GCBOC agenda. The GCBOE made a public plea for the GCBOC to approve the purchase at a joint meeting between the boards. In fact, Beckham acknowledged that "the school board followed all the proper steps they were supposed to do, brought the project to the County."[4]

(Doc. No. 107, p. 9-10) (citing to the record). As such, the Court finds that the GCBOE has submitted sufficient evidence to support its request for summary judgment. See Emmett, 532 F.3d at 297. MBRG, on the other hand, has failed to meet its burden of showing that there are genuine issues of material fact. Apart from a single email sent by an elected member of the GCBOE to her fellow board members, which Plaintiff contends "set off the orchestrated plan among the defendants in this action to remove Plaintiff from the transactions involving the subject property," see (Doc. No. 117, pp. 6-7), MBRG has failed to identify any testamentary or documentary evidence to support its claim that the GCBOE breached its duty of good faith and fair dealing, and this Court is "well within its discretion in refusing to ferret out the facts that counsel has not bothered to excavate," Cray Commc'ns. Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 396 (4th Cir. 1994).

The Court simply finds that no reasonable juror could view the evidence as a whole and find that this email from a single GCBOE member showed that the GCBOE was not acting in good

---

[4] The explicit terms of the contract between MBRG and the GCBOE included a reference to N.C.G.S. § 115C-426(f), which required that the GCBOE obtain approval from Gaston County before purchasing the property.

faith under its contract with MBRG, particularly given Beckham's concession that the GCBOE followed all the proper steps. And while the Court must view permissible inferences in favor of the Plaintiff as the nonmoving party in this motion for summary judgment, such inferences "must 'fall within the range of reasonable probability and not be so tenuous as to amount to speculation and conjecture." KC Holding Co. v. Washington Sports Ventures, 264 F.3d 459, 465 (4th Cir.2001) (quoting Thompson Everett, Inc. v. Nat'l Cable Advert. L.P., 57 F.3d 1317, 1323 (4th Cir. 1995)). Here, the Court finds that MBRG's inferences do not rise above mere speculation and conjecture and, therefore, the GCBOE is entitled to summary judgment on this claim.

For the reasons stated in open court, the Court denies summary judgment as to MBRG's breach of implied covenant of good faith and fair dealing claim against The Foundations.

F. Unjust Enrichment/*Quantum Meruit*

For the reasons stated in open court, the Court denies summary judgment as to MBRG's unjust enrichment/*quantum meruit* claims and allows MBRG to proceed with these claims in the alternative against The Foundations.

IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants Gaston County, Gaston County Board of Education, Tracy Philbeck, and Catherine Roberts' Motions for Summary Judgment (Docs. Nos. 101, 102, 104, 108) are GRANTED. Defendants Carstarphen Family Foundation and The Stowe Family Foundation, Inc.'s Motion for Summary Judgment (Doc. No. 99) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Signed: May 14, 2019

Frank D. Whitney
Chief United States District Judge