UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00427-FDW-DCK

| | |
|---|---|
| MB REALTY GROUP, INC. and MATT BECKHAM, )<br>)<br>    Plaintiffs, )<br>)<br>vs. )<br>)<br>THE GASTON COUNTY BOARD OF EDUCATION, GASTON COUNTY, CARSTAPHEN FAMILY FOUNDATION, THE STOWE FOUNDATION, INC., CATHERINE ROBERTS, and TRACY PHILBECK, )<br>)<br>    Defendants. ) | ORDER |

THIS MATTER is before the Court on Plaintiffs' Motion for Default Judgment and Sanctions Against Defendants Tracy Philbeck ("Philbeck") and Catherine Roberts ("Roberts"). (Doc. No. 93). Defendants Philbeck and Roberts responded to the motion, (Docs. Nos. 95, 97), Plaintiffs replied, (Docs. Nos. 111, 112), and this matter is now ripe for review. For the reasons stated below, Plaintiffs' Motion for Default Judgment and Sanctions against Defendants is DENIED. Plaintiffs' earlier Motion for Default Judgment and Sanctions, (Doc. No. 92), is hereby DENIED AS MOOT.

I. BACKGROUND

In the interests of judicial economy, the Court provides a general overview of the case here but summarizes the specific background relevant to the issues raised by the parties' motions and answers in the analysis. This litigation stems from Plaintiffs' contention MB Realty Group, Inc. ("MBRG") was "cut . . . out" of a deal wherein Plaintiffs planned to purchase a 78-acre parcel

1

from Defendants Carstarphen Family Foundation and The Stowe Foundation ("the Foundations") and then subsequently sell the same parcel of land to Defendant Gaston County Board of Education ("GCBOE") whereby Plaintiffs would realize a roughly $400,000 profit. (Doc. No. 32, pp. 4-8). After Plaintiffs failed to close on the property by the extended closing date of May 16, 2017, provided by the Foundations, the GCBOE eventually purchased the parcel directly from the Foundations. Id.

Plaintiffs sued Defendants Philbeck and Roberts for libel *per se*, unfair and deceptive trade practices ("UDTPA"), and punitive damages. Id. at 13-14. Plaintiffs alleged Defendant Roberts, a member of the GCBOE, published and Defendant Philbeck, a Gaston County Commissioner, "re-published an email to various members of GCBOE and others," which:

> "[M]ade false statements about a prior transaction involving Mr. Beckham, specifically stating that 'Pearson, Gray and Hoyle refuse to take the commission owed to them, due to the fact of the land purchase going on before the foreclosure process and because of the relationship between Kevin and Matt Beckham. Matt Beckham is paid a commission fee.'"

Id. at 5.

Plaintiffs' Motion for Default Judgment and Sanctions Against Defendants Philbeck and Roberts ("Motion") seeks an order pursuant to Federal Rule of Civil Procedure 37(e) containing the following: (1) a presumption that the lost information from the emails was unfavorable to Defendant Philbeck, (2) a default judgment against Defendant Philbeck, (3) in the alternative, a jury instruction to presume the information in the emails was unfavorable to Philbeck, (4) a presumption the information in the text messages not handed over by Roberts was unfavorable as to Roberts, (5) a default judgment against Roberts, (6) a jury instruction presuming the information in the text messages was unfavorable to Roberts, (7) "measures no greater than necessary to cure the prejudice," and (8) Defendants Philbeck and Roberts to be liable jointly and severally for reasonable expenses and attorney's fees connected to the Motion. (Doc. No. 93-1, p. 5).

## II. LEGAL STANDARD

A sanction for spoliation of evidence should "(1) deter the parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence. . . ." Eshelman v. Puma Biotechnology, Inc., No. 7:16-cv-18-D, 2017 WL 2483800, at *11-12 (E.D.N.C. June 7, 2017) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2nd Cir. 1999)). There are two avenues by which a court may impose sanctions for spoliation, "(1) Fed. R. Civ. P. 37(e); and (2) [the Court's] 'inherent power'" Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991)).

According to Rule 37(e) of the Federal Rules of Civil Procedure:

If electronically stored information that should have been preserved in the anticipation of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
(1) Upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
(2) Only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
    A. Presume that the lost information was unfavorable to the party
    B. Instruct the jury that it may or must presume the information was unfavorable to the party; or
    C. Dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

"[I]n ascertaining the[] meaning [of the Federal Rules of Civil Procedure] the construction given to them by the [Advisory] Committee is of weight." Nuvasive, Inc. v. Kormanis, No. 1:18-cv-282, 2019 WL 1171486, at *2 (M.D.N.C. Mar. 13, 2019) (citing Mississippi Publishing Corp. v. Murphee, 326 U.S. 438, 444 (1946)). Rule 37(e) as amended "forecloses reliance on inherent authority or state law to determine when certain measures should be used" and "displaced judicial

3

inherent authority as a mechanism for sanctioning ESI spoliation." Nuvasive, 2019 WL 1171486 at *2; see also Chambers, 501 U.S. at 47-49 (stating "the inherent power of lower federal courts can be limited by statute or rule" and then looking to whether the "Advisory Committee's Notes on [an] Amendment to [a Federal Rule of Civil Procedure] repeal[ed] or modif[ied] existing authority of federal courts to deal with abuses under inherent power." (internal ellipsis and quotation marks omitted)). A movant seeking a spoliation sanction pursuant to Rule 37(e) must satisfy the following four requirements: "(1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery." Eshelman, 2017 WL 2483800, at *4.

Rule 37(e)(1) requires a "finding of prejudice to another party" before sanctions can be imposed. Id. at *14. The Advisory Comments to Rule 37(e) note the Court may, in its discretion, consider if the lost information is "unimportant, or [whether] the abundance of preserved information [] appear[s] sufficient to meet the needs of all parties." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The Court may also "requir[e] the party seeking curative measures to prove prejudice." Id.

Pursuant to Rule 37(e)(2), "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation," the Court may imply a negative presumption regarding the lost information or "dismiss the action or enter a default judgment." Id.; see also Shaffer v. Gaither, No. 5:14-cv-00106-MOC-DSC, 2016 WL 6594126, at *2 (W.D.N.C. Sept. 1, 2016) (holding Rule 37(e)(2) allows sanctions for "spoliation only where [the] party acted with an intent to deprive.").

4

III. ANALYSIS

Plaintiffs' Motion and brief in support thereof states "Pursuant to Rule 37(e), Plaintiffs seek appropriate sanctions." (Doc. No. 93, p. 1; Doc. No. 93-1, p. 1). Because the 2015 amendment to Rule 37(e) "forecloses reliance on inherent authority" when pursuing sanctions under Rule 37(e), and Plaintiffs only request sanctions pursuant to Rule 37(e), analysis of the Court's "inherent power" to impose sanctions is unnecessary.[1] See Nuvasive, 2019 WL 1171486, at *2-3 (declining to impose sanctions on "inherent" grounds and relying on the Advisory Committee's notes that indicate Rule 37(e) "forecloses reliance on inherent authority" regarding ESI sanctions).

A. Defendant Philbeck

On January 31, 2019, Plaintiffs filed this Motion against Defendant Philbeck, alleging "Defendant Philbeck has not produced any emails related to his personal email account [tracy@tracyphilbeck.com] even though some emails were produced by other parties" and "he deleted emails after receiving the preservation of evidence letter." (Doc. No. 93-1, pp. 2-3). Plaintiffs claim Defendant Philbeck's emails would have revealed "at least part of the plan among the defendants in this action to harm the Plaintiffs." Id. at 5.

Defendant Philbeck responded to Plaintiffs' Motion, claiming he did in fact preserve all emails relating to his work as a Gaston County Commissioner sent to his personal account by forwarding them to a "gaston.gov" ("Gaston") email account to "create[] a public record." (Doc. No. 97, pp. 3-4). Defendant Philbeck further asserts that upon receipt of the preservation letter sent by Plaintiffs, he checked his personal email account "at least twice to make sure" all relevant

---

[1] However, should "inherent power" remain a viable means for imposing sanctions for spoliation of ESI, this Court would not reach an outcome contrary to its determination here under Rule 37(e). See Nuvasive, 2019 WL 1171486, at *2-3 n.2, 4, 5 (citing Worldpay, US, Inc. v. Haydon, No. 17-cv-4179, 2018 WL 5977926, at *3 n.1 (N.D.Ill. Nov. 14, 2018)).

5

emails had been forwarded to a Gaston account. Id. at 4. Defendant Philbeck further states that his personal email server began having technical problems in April 2018, and upon the advice of his information technology provider, the only way to fix the problem was to delete all emails from the server. Id. Defendant Philbeck asserts he had already forwarded all work-related emails to a Gaston address for preservation, allowing him to delete all the emails from his personal server without causing any loss of information since Defendant Philbeck knew all the emails forwarded to a Gaston account would be produced in discovery by Gaston County. Id. Since Defendant Philbeck does not have access to Gaston County's email server, he answered in response to Plaintiffs' discovery requests that he did not have "possession, control, or custody" of the emails requested by Plaintiffs. Id. Gaston County did produce in its discovery requests emails forwarded from Defendant Philbeck's personal email to a Gaston email. Id.

For Rule 37(e) sanctions to be applicable, the four threshold requirements in Eshelman, 2017 WL 2483800, must be met. First, Defendant Philbeck's emails relating to the property at issue are materials to be preserved for discovery. Second, while Plaintiffs claim Defendant Philbeck's emails relating to this action are lost, (Doc. No. 93-1, p. 4), Defendant Philbeck argues that although he cannot access emails through his personal server from before April 2018, all relevant emails were forwarded to and preserved on his Gaston account. (Doc. No. 97, p. 5). For purposes of this decision, this Court will assume emails were lost.[2]

The third factor is met if the ESI is lost because of a failure to take reasonable steps to preserve the information. Eshelman, 2017 WL 2483800, at *4. The Advisory Committee's Comment to Rule 37(e) provides that "reasonable steps" to preserve evidence "does not call for perfection" and further instructs courts to "be sensitive to the party's sophistication with regard to

---

[2] This assumption is made to streamline the Court's analysis but should not be construed as a finding of fact by this Court.

litigation in evaluating preservation efforts . . . particularly individual litigants, [who] may be less familiar with preservation obligations. . . ." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Defendant Philbeck provided an affidavit stating he received advice that forwarding his personal emails to his Gaston account would preserve any such emails. (Doc. No. 97-1, pp. 7-9). Furthermore, Defendant Philbeck stated it was his practice to delete emails from his personal account after forwarding them to a Gaston account and only after "knowing that I had gone through and transferred all emails from this account that involved this lawsuit to gastongov.com," did he authorize the deletion of all emails from his personal server. Id. Because Defendant Philbeck, an individual with likely little litigation experience, was advised that forwarding his emails to a Gaston account would preserve them, and he refrained from deleting emails from his server before checking his personal email account twice for any remaining relevant emails, this Court finds Defendant Philbeck took reasonable steps to preserve the emails at issue. Therefore, Rule 37(e) sanctions are not warranted.

Even assuming *arguendo* reasonable steps for preservation were not taken, and the fourth factor in Eshelman requiring the ESI to be irreplaceable through additional discovery are met, Plaintiffs' Motion is unpersuasive to this Court. Plaintiffs' claims against Defendant Philbeck for libel *per se* and unfair and deceptive trade practices are based on an email Plaintiffs possessed even before filing their amended complaint. (Doc. No. 32, p. 5). Furthermore, Plaintiffs have not shown support for a claim that Defendant Philbeck sent or received any additional emails beyond those turned over by Gaston County or other parties in the course of discovery that would be helpful to proving their case for libel and UDTPA. To the extent any emails were lost, this Court finds no prejudice to Plaintiffs, and therefore no grounds for sanctions, including assessment of attorney's fees, under Rule 37(e)(1), because any lost information appears insignificant and

7

unimportant in light of the numerous emails from Defendant Philbeck's personal account which Plaintiffs received during discovery.

Plaintiffs argue Defendant Philbeck "acted with the intent to deprive" Plaintiffs of information by "purposefully deleting the emails." (Doc. No. 93-1, p. 4). Defendant Philbeck, however, maintains he only deleted emails after being advised they had been preserved on Gaston County's server and double-checking his personal inbox "at least twice to make sure all emails relating to Gaston County matters had been forwarded." (Doc. No. 97, p. 4). Based on these facts in the record, this Court is unpersuaded Defendant Philbeck "acted with the intent to deprive" Plaintiffs of the emails, and therefore, finds no grounds for sanctions under Rule 37(e)(2). Furthermore, Plaintiffs' requests for negative inference jury instructions or the entering of a default judgment are mooted by this Court's ruling granting summary judgment to Defendant Philbeck on all claims. (Doc. No. 145).

B. Defendant Roberts

Plaintiffs filed this Motion requesting entry of default judgment and/or sanctions against Defendant Roberts alleging she "purposefully delet[ed]" text messages that would have revealed "at least part of the plan among the defendants in this action to harm the Plaintiffs." (Doc. No. 93-1, pp. 4-5). Defendant Roberts argues she keeps text messages on her phone "for a few weeks or a couple months at most." (Doc. No. 95, p. 4). Although Defendant Roberts does not remember exactly when she was informed to "preserve information on her cell phone, which she understood to mean emails," the earliest possible time Defendant Roberts could have known about the letter was when Kevin Bringewatt, GCBOE's attorney, received a letter on April 13, 2017, about six weeks after Defendant Roberts sent the email Plaintiffs contend was libelous. Id. at 3. Defendant Roberts also contends she never had any "substantive discussions by text" regarding this matter

8

but rather may have sent short messages to her fellow board members consisting of "Please call me, that sort of thing." Id. at 4. Furthermore, Defendant Roberts asserts "[t]here is no evidence that [she] exchanged text messages with anyone other than fellow GCBOE members and Superintendent Booker" and that Plaintiffs' argument "relies wholly on speculation that Roberts sent text messages that were somehow related to the claims of libel and UDTP[A] against her." Id. at 4-5.

"A successful claim for spoliation of evidence cannot be premised on mere speculation on the existence of such evidence." Wimbush v. Matera, No. SAG-11-1916, 2014 WL 7239891, at *32 (D. Md. Dec. 17, 2014). "[S]peculative or generalized assertions that the missing evidence would have been favorable to the party seeking sanctions are insufficient." In re Ethicon, Inc. Pelvic Repair Systems Product Liability Litigation, 299 F.R.D. 502, 523 (S.D.W.Va. Feb. 4, 2014). Here, Plaintiffs rely on "mere speculation" that Defendant Roberts's text messages between May 2017 and August 2017, several months after Defendant Roberts published the alleged libel in February 2017, would benefit them in showing "the plan among the defendants in this action to harm the Plaintiffs." (Doc. No. 93-1, p. 5). This Court finds Plaintiffs' claims regarding the deleted text messages speculative because Plaintiffs' do not present any evidence supporting their assertion that Defendant Roberts's text messages to her fellow GCBOE members, or other persons if such communications existed, three months after the alleged libel[3] occurred "would have been favorable to" Plaintiffs. In re Ethicon, 299 F.R.D. at 523.

Assuming *arguendo* Plaintiffs' assertion that Defendant Roberts's text messages would be helpful to their case is not based on speculation, the text messages should have been preserved, the text messages were lost because of Defendant Roberts's failure to take reasonable steps to preserve

---

[3] This Court has already held that the UDTPA claim against Defendant Roberts is contingent on the libel *per se* claim. (Doc. No. 145, p. 5).

9

them, and the text messages cannot be restored or replaced through additional discovery, this Court remains unpersuaded that sanctions are warranted under Rule 37(e). See generally Eshelman, 2017 WL 2483800, at *4 (explaining the latter four factors discussed above as threshold requirements for Rule 37(e) sanctions).

The Court must find that the party seeking sanctions has been prejudiced before imposing sanctions under Rule 37(e)(1). Id. at 14. Plaintiffs have not shown prejudice because they have failed to show how the deletion of text messages between Defendant Roberts and members of the GCBOE consisting of requests to call each other would be important to proving their case for libel *per se*. Furthermore, Plaintiffs have failed to show how the text messages develop their UDTPA claim against Defendant Roberts given the fact there is no evidence showing Defendant Roberts communicated via text with anyone outside the GCBOE regarding this matter. This Court therefore finds no grounds for sanctions, including assessment of attorney's fees, against Defendant Roberts under Rule 37(e)(1).

To the extent Plaintiffs' request for sanctions pursuant to Rule 37(e)(2) is not mooted by this Court's Order on Summary Judgment, (Doc. No. 145), this Court does not find that Defendant Roberts "acted with the intent to deprive" Plaintiffs of the use of the text messages in this litigation. Fed. R. Civ. P. 37(e)(2). In her deposition, Defendant Roberts testified she thought the instruction given her "to preserve electronic information on her cell phone" was referring only to emails, and therefore, she maintained her usual practice of deleting her text messages every "few weeks or a couple months at most." (Doc. No. 95, pp. 3-4). Furthermore, Defendant Roberts did not seek to deprive Plaintiffs of the contents of text messages in her deposition since she stated that any texts relating to this matter were short messages such as "call me." Id. at 4. Defendant Roberts indicated her deletion of messages was part of her usual practice, not an attempt to prevent Plaintiffs from

obtaining the text messages, and upon realizing Plaintiffs desired her text messages, she attempted to recount their contents to Plaintiffs. Id. The evidence in the record does not support a finding that Defendant Roberts "acted with the intent to deprive" Plaintiffs of the information, and therefore, this Court finds no grounds for sanctions against Defendant Roberts under Rule 37(e)(2).

## IV. CONCLUSION

Because this Court finds no grounds for sanctions against either Defendant Philbeck or Defendant Roberts under Rule 37(e)(1) or Rule 37(e)(2), Plaintiffs' Motion for Default Judgment and Sanctions, (Doc. No. 93), against Defendant Tracy Philbeck and Defendant Catherine Roberts is DENIED.

IT IS SO ORDERED.

Signed: May 28, 2019

Frank D. Whitney
Chief United States District Judge